UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOHN L. SANDERS**                                                                                              **PLAINTIFF**

**V.**                                    **NO. 4:20CV00251 BSM-JTR**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                                **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.   Introduction:**

Plaintiff, John L. Sanders ("Sanders"), applied for disability benefits on August 11, 2018, alleging disability beginning on August 3, 2017. (Tr. at 15). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application on December 3, 2019. *Id.* The Appeals Council denied Sanders's request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Sanders has filed a Complaint seeking judicial review from this

Court.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. The Commissioner's Decision:

The ALJ found that Sanders had not engaged in substantial gainful activity since the alleged onset date of August 3, 2017. (Tr. at 17). At Step Two, the ALJ found that Sanders had the following severe impairments: osteoarthritis and degenerative disc disease of the cervical and lumbar spine status post-cervical spine surgery, obesity, obstructive sleep apnea, and a history of left knee surgery. (Tr. at 18).

After finding that Sanders's impairments did not meet or equal a listed impairment (Tr. at 19-20), the ALJ determined that Sanders had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that: (1) he can only occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) he can only occasionally balance, stoop, kneel, crawl, and crouch; (3) he can frequently, but not constantly, reach and handle bilaterally; and (4) he must avoid concentrated exposure to hazards including driving as part of work. (Tr. at 20).

The ALJ found that Sanders was unable to perform any of his past relevant work. (Tr. at 25). At Step Five, the ALJ relied on the testimony of a Vocational

Expert ("VE") to find that, based on Sanders's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including work as a call out operator, a telephone order clerk, and a telephone information clerk. (Tr. at 26). Thus, the ALJ found that Sanders was not disabled. *Id*.

### III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning

3

of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Sanders's Arguments on Appeal

Sanders contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: (1) the ALJ did not properly assess medical opinions; (2) the ALJ failed to fully develop the record; (3) the ALJ did not properly analyze Sanders's subjective complaints; and (4) the ALJ failed to carry his burden of proof at Step Five. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Sanders's main medical complaints, and those upon which he bases his case, are PTSD and radiating back pain.

As for PTSD, Sanders did receive minimal treatment for the condition, after he was granted a VA disability rating of 33% based on the illness.[1] The record only reflects a handful of therapy appointments in the spring of 2019. (Tr. at 731-738). At those appointments, Sanders's mental status examinations were normal and the recommended treatment was conservative. *Id*. Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). The therapist observed that Sanders had many friends and family with whom he socialized. *Id*. Sanders admitted that he took no psychiatric medication, and had never been hospitalized for his condition. *Id*. He said that he got coffee with friends, went to bars, and dated. (Tr. at 47-56). The Disability Determination Services psychological experts reviewed the records and determined that mental impairments were non-severe. (Tr. at 77-95). The ALJ considered these opinions, along with negligible evidence of problems stemming from PTSD, and concurred that mental impairments were non-severe. (Tr. at 18).

As for physical impairments, an MRI of Sanders's cervical spine showed severe central spinal stenosis with broad based disc herniation. (Tr. at 523). To treat

---

[1] Sanders received a total VA disability rating of 100%. (Tr. at 52-53). The ALJ considered this evidence, but properly ruled it to be unpersuasive. (Tr. at 24).The Administration is not bound by the disability ratings of another agency, especially when the record does not justify a disability finding. *Pelkey v. Barnhart*, 433 F.3d 575, 580 (8th Cir. 2008); *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998).

this condition, Sanders underwent a total disc arthroplasty at C5-C6 in September 2017. *Id*. After that, he reported decreased radicular pain, and upon examination by a neurologist, Sanders had normal motor strength with only mild weakness in his lower extremities.[2] (Tr. at 531, 654). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). Sanders's neurologist did not recommend further surgery; he suggested conservative care like physical therapy. (Tr. at 21, 655, 716).

A lumbar MRI showed moderate-to-severe degenerative changes, for which Sanders's doctor suggested steroid injections. (Tr. 767-727). Sanders declined to have injections. (Tr. at 716). A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) Sanders also testified, at the hearing in 2019, that he was still considering whether to follow his doctor's recommendation for spinal cord stimulation. (Tr. at 57).

Sanders testified that he could lift 20 pounds (that approximates light work, and the ALJ dropped Sanders down to an RFC for sedentary work). He also said he could perform light chores (including mopping three rooms), he could drive, he

---

[2] Nerve conduction studies and electromyography of Sanders's lower extremities were both negative for peripheral neuropathy. (Tr. at 711-713, 743).

could shop for groceries, and he could socialize. (T. at 47-56). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Sanders also said that Gabapentin and heating pads helped for his pain. (Tr. at 47, 225).

Sanders had two consultative examinations. Dr. Don Ott, Psy.D., performed a mental functional examination on October 5, 2018. (Tr. at 273-279). At the exam, Sanders had a pleasant and cooperative mood, with good eye contact and rational and coherent thought process. *Id.* He said he got seven hours of sleep (in spite of complaints of insomnia and nightmares). *Id.*; (Tr. at 731-738). He admitted that he had not started mental health treatment*. Id*. Dr. Ott assessed no specific limitations in work-related mental functions. *Id*. The ALJ found this opinion to be persuasive.[3] (Tr. at 24). The ALJ's determination was supported by the lack of treatment records for PTSD, and by Sanders's ability to engage in a variety of daily activities.

---

[3] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is persuasive if it is sufficiently relevant to and consistent with the medical evidence as a whole. *See Phillips v. Saul*, No 1:19-CV-00034-BD, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*. It is worth noting that ALJs no longer assign "weight" to opinion evidence; instead they specifically explain the "persuasiveness" of the opinion. Sanders's attorney protests the absence of the word "weight" in the ALJ's evaluation of the opinion evidence. The new regulations do not require that an ALJ use the word "weight."

Dr. Michael Westbrook, M.D., performed a consultative examination of Sanders on October 30, 2018. (Tr. at 422-427). He found normal range of motion in Sanders's back and extremities, and Sanders had negative bilateral straight-leg raises. *Id*. While Dr. Westbrook wrote that Sanders walked with a guarded gait and had balance issues, he assessed only mild functional limitations. *Id*. The ALJ found this opinion to be unpersuasive due to the vague nature of the functional assessment. (Tr. at 24). Essentially, the ALJ gave credit to Sanders's subjective complaints and reduced the exertional level down to sedentary, explaining that Sanders was more limited than Dr. Westbrook allowed. *Id*. The Court finds this analysis to be well-supported by the record as a whole.

Sanders avers that the ALJ should have further developed the record. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving his disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011)

First, Sanders's attorney stated at the hearing that the record was complete.

(Tr. at 34). This undermines the attorney's claim; a claimant's representative has an affirmative duty to obtain and supply information necessary for the claimant to support his claim. 20 C.F.R. §§ 404.1540(b), 416.940(b). Also, the record did not contain inconsistencies requiring clarification. The ALJ fully discussed the medical opinions and gave good reasons for his characterizations thereof. Objective testing did reveal chronic conditions, but treatment, including surgery, relieved symptoms. Sanders elected not to proceed with recommended treatment, indicating his conditions were not disabling. And contrary to Sanders's assertion, the ALJ was not bound to discuss Global Assessment of Functioning ("GAF") scores (Dr. Ott assigned GAF scores of 50 to 60, which is defined as only moderate difficulty in social or occupational functioning). *See Halverson v. Astrue*, 600 F.3d 922, 930-931 (8th Cir. 2010). Moreover, the Commissioner has declined to endorse GAF score use in these proceedings because they have no direct correlation to the severity requirements of mental disorders listings. *See Jones v. Astrue*, 619 F.3d 963, 973-974 (8th Cir. 2010). The Court finds that the record was fully developed.

Sanders also asserts that the ALJ did not properly evaluate his subjective complaints. Again, the ALJ's reduction to an RFC for sedentary work shows that he did consider some of Sanders's complaints. For example, Sanders himself said he could lift 20 pounds, but the ALJ's assigned RFC was more restrictive. (Tr. at 51).

Social Security Ruling 16-3p removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. 2016 SSR LEXIS 4 ("SSR 16-3p"); 20 C.F.R. §§ 404.1527, 404.927. SSR 16-3p became effective on March 28, 2016, and the underlying analysis incorporates the familiar factors (previously described by ALJs as the *Polaski* factors) that were in place prior to the new ruling. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 *14-15 (W.D. Mo. Jan. 9, 2017)(familiar factors include a claimant's daily activities; the nature, duration, frequency and intensity of his symptoms; precipitating and aggravating factors; the type of medication and other treatment or measures used for the relief of pain and other symptoms; and functional restrictions); *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

The ALJ in this case discussed the nature of Sanders's pain, the conservative treatment he used (which proved to be helpful), and his ability to perform daily activities. (Tr. at 22-24). He cited to medical testing results and medical opinions. His analysis of subjective complaints was proper.

Finally, Sanders argues that because the ALJ did not include fatigue as part of the hypothetical he posed to the VE at Step Five, the hypothetical was insufficient. For this reason, he contends, the ALJ did not carry his Step Five burden. This


argument is unconvincing.

After determining that a claimant cannot perform past relevant work at Step Four, the burden shifts to the Commissioner to prove that other jobs exist which the claimant can perform. *See Nunn v. Heckler*, 732 F.2d 645, 649 (8th Cir. 1984). The Commissioner may meet his burden at Step Five by eliciting testimony from a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). A hypothetical question need only include those impairments and limitations found credible by the ALJ. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). Sanders could travel long distances to date, he could socialize at bars with friends, and he said he got about seven hours of sleep per night. (Tr. at 47-56, 273-279). No objective evidence points to serious problems with fatigue. The ALJ posed a proper hypothetical at Step Five, thereby carrying his burden.

### IV.   Conclusion:

There is substantial evidence to support the Commissioner's decision that Sanders was not disabled. The record was fully developed, the ALJ properly analyzed the subjective complaints and the opinion evidence, and the ALJ carried his burden at Step Five.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 13th day of April, 2021.

_____
UNITED STATES MAGISTRATE JUDGE